code, we determine that the juvenile court maintains the authority to create visitation arrangements within the context of a guardianship, so long as those arrangements are in the best interests of the juvenile. In this case, the juvenile court was operating under the misconception that it was without authority to order visitation. Because we determine that the juvenile court does have the authority to order visitation between the mother and the affected juvenile, we reverse in part, and remand to the juvenile court for a determination of May Lynn's visitation rights.

## VI. CONCLUSION

We determine that the juvenile court properly issued the letters of guardianship, and therefore, we affirm that portion of the juvenile court's decision. The juvenile court erred, however, in determining that it lacked authority to award visitation rights in a guardianship proceeding. Accordingly, we reverse in part, and remand to the juvenile court for a determination of May Lynn's visitation rights.

Affirmed in part, and in part reversed
and remanded with directions.

Pirtle, Judge, participating on briefs.

---

In re Interest of Jayden D. and Dayten J.,
children under 18 years of age.
State of Nebraska, appellee, v. Yolanda W.,
formerly known as Yolanda O., appellant.
___ N.W.2d ___

Filed January 14, 2014.    No. A-13-193.

1. **Indian Child Welfare Act: Jurisdiction: Appeal and Error.** A denial of a transfer to tribal court under the Indian Child Welfare Act is reviewed for an abuse of discretion.
2. **Judges: Words and Phrases.** A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

3. **Indian Child Welfare Act: Jurisdiction: Proof.** The party opposing a transfer of jurisdiction to the tribal courts has the burden of establishing that good cause not to transfer the matter exists.

4. **Indian Child Welfare Act: Words and Phrases.** Under the definitional sections of the Indian Child Welfare Act and the Nebraska Indian Child Welfare Act, the term "child custody proceeding" includes foster care placement, termination of parental rights, preadoptive placement, and adoptive placement.

5. **Indian Child Welfare Act.** A foster placement proceeding and a subsequent termination of parental rights proceeding involving an Indian child are separate and distinct under the Indian Child Welfare Act and the Nebraska Indian Child Welfare Act.

6. **Indian Child Welfare Act: Child Custody: Jurisdiction.** The courts of this state should not apply the "best interests of the child" standard in deciding whether good cause exists to deny motions to transfer child custody proceedings to tribal court.

7. **Indian Child Welfare Act: Jurisdiction.** Regarding the Indian Child Welfare Act, in determining whether the doctrine of forum non conveniens should be invoked, the trial court should consider practical factors that make trial of the case easy, expeditious, and inexpensive, such as the relative ease of access to sources of proof, the cost of obtaining attendance of witnesses, and the ability to secure attendance of witnesses through compulsory process.

Appeal from the Separate Juvenile Court of Lancaster County: Reggie L. Ryder, Judge. Reversed and remanded with directions.

Patrick T. Carraher, of Legal Aid of Nebraska, for appellant.

Joe Kelly, Lancaster County Attorney, and Maureen E. Lamski for appellee.

Moore, Pirtle, and Bishop, Judges.

Moore, Judge.

### INTRODUCTION

Yolanda W., formerly known as Yolanda O., appeals from the decision of the separate juvenile court of Lancaster County, which denied her motion to transfer the termination of parental rights proceeding in this juvenile case to tribal court. Because we find that the State failed to establish good cause to deny the transfer, we conclude that the juvenile court abused its discretion in denying the motion to transfer. Accordingly, we reverse the order of the juvenile court and remand the cause to the

juvenile court with directions to sustain the motion to transfer
to the tribal court.

## BACKGROUND

Yolanda is the mother of Jayden D. and Dayten J. Because
neither child's father is involved in this appeal, we discuss the
issues only as they relate to Yolanda, Jayden, and Dayten. The
children were removed from Yolanda's care on December 2,
2010, when they were placed in the temporary legal custody
of the Nebraska Department of Health and Human Services
(the Department). The children have remained in placements
outside the family home since that time.

On December 3, 2010, the State filed a petition in the juve-
nile court, alleging that Jayden and Dayten were persons as
defined by Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008) in
that they lacked proper parental care by reason of the fault or
habits of their mother, Yolanda.

The children were apparently adjudicated on January 4,
2011, although the adjudication order is not included in our
record on appeal. On that date, the juvenile court also found
that the provisions of the Nebraska Indian Child Welfare
Act (NICWA) apply to this case. On April 15, following a
dispositional hearing, the court found that expert testimony
had been provided as required under NICWA and found clear
and convincing evidence that being under Yolanda's care
was likely to result in serious emotional or physical damage
to the children. The court also found that active efforts had
been made in the form of case management, service coordi-
nation, pretreatment assessment, supervised visits, intensive
outpatient treatment, transportation, clothing, medication con-
sultation, and monthly team meetings to eliminate out-of-
home placement.

The record shows that on April 6, 2012, the State filed a
motion seeking to terminate Yolanda's parental rights to both
children, although our record does not include a copy of that
motion or any filings that may have been made after it and
prior to the termination hearing. A formal hearing was held
on the termination motion on December 7 and 10. The record
shows that no motion to transfer the case was made prior to

that time, either by Yolanda or by the Oglala Sioux Tribe (the Tribe). At the hearing, the State apparently moved to dismiss the termination allegations relating to Jayden and the matter was submitted only on the allegations relating to Dayten.

On December 12, 2012, the juvenile court entered an order dismissing the motion to terminate Yolanda's parental rights. The order indicated that Dayten's father had relinquished his parental rights on December 10. The court recited several findings regarding Yolanda, including that she had made minimal progress, had been inconsistent in family therapy and visitation, had attempted to commit suicide in her home and was discovered by Dayten, had "great instability" in her personal life, and had been homeless and without means of support during periods of the preceding year. However, because the motion for termination did not include allegations that conformed to NICWA, the court found that dismissal was required due to the State's failure to state facts sufficient to constitute a cause of action for termination of parental rights under NICWA. The court noted, however, that had the case not been governed by NICWA, the outcome would likely have been different.

On January 2, 2013, the State filed a second motion, seeking to terminate Yolanda's parental rights only with respect to Dayten. The State alleged that grounds for termination existed under Neb. Rev. Stat. § 43-292(2), (4), (6), and (7) (Cum. Supp. 2012). The State also alleged that termination of Yolanda's parental rights was in Dayten's best interests and included the required NICWA allegations.

An affidavit and notice filed January 8, 2013; an order dated January 4, 2013; and a copy of the second termination motion were sent to the Tribe. The record shows that the Tribe received the notice on January 23.

On January 16, 2013, Yolanda filed a motion seeking to transfer the proceedings with respect to Dayten to tribal court. Among other things, she alleged that Dayten was eligible for membership in the Tribe and that she was unaware of any facts supporting good cause not to transfer. The State filed an objection to Yolanda's motion on February 12, alleging that the motion failed to state the tribal court would accept the

case, that the case was at an advanced state of the termination proceeding, that the transfer was not in Dayten's best interests, that the tribal court was an inconvenient forum, and that good cause existed not to transfer the case.

On February 14, 2013, the juvenile court heard Yolanda's motion to transfer. The court received into evidence a voluntary consent to temporary foster care placement signed by Yolanda in January 2011, which Yolanda offered in order to show tribal affiliation. The consent form shows that Yolanda is an enrolled member of the Tribe, but the portion of the form relating to Dayten's enrollment in or eligibility for tribal membership was left blank. The Department caseworker assigned to the case testified that she had not ever had any contact with the Tribe in connection with this case and was not aware of whether the Tribe would accept a transfer. She was also not aware of whether the Department had had any such contact.

According to the caseworker, before Dayten's initial placement, the Department looked for a Native American home, but there were none available. Since his removal from Yolanda's home, Dayten has been in at least three different foster homes, none of which have been Native American foster homes. The caseworker also testified about Dayten's behavioral issues, which have sometimes made it difficult to find placement for him. The current foster family had not indicated a willingness to adopt, but as far as the caseworker knew, Dayten was doing "okay" in his current placement.

On March 4, 2013, the juvenile court entered an order overruling the motion to transfer. The court found that good cause had been shown to deny the motion to transfer the proceedings as to Dayten because the court would continue to exercise jurisdiction over Jayden. The court also found that the motion to transfer was filed at a late stage of the proceeding in that the case had been pending for over 2 years and a formal hearing had already been held on the first motion for termination that was filed nearly a year before. Yolanda subsequently perfected her appeal to this court.

## ASSIGNMENT OF ERROR

Yolanda asserts that the juvenile court erred in denying her motion to transfer the termination of parental rights proceeding in this juvenile case to tribal court.

## STANDARD OF REVIEW

[1,2] A denial of a transfer to tribal court under the federal Indian Child Welfare Act (ICWA) is reviewed for an abuse of discretion. *In re Interest of Zylena R. & Adrionna R.*, 284 Neb. 834, 825 N.W.2d 173 (2012), *cert. denied sub nom. Nebraska v. Elise M.*, ___ U.S. ___, 134 S. Ct. 65, ___ L. Ed. 2d ___ (2013). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *In re Interest of Samantha L. & Jasmine L.*, 284 Neb. 856, 824 N.W.2d 691 (2012).

## ANALYSIS

Yolanda asserts that the juvenile court erred in denying her motion to transfer the termination of parental rights proceeding in this juvenile case to tribal court.

[3] NICWA provides in Neb. Rev. Stat. § 43-1504(2) (Reissue 2008):

> In any state court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe, except that such transfer shall be subject to declination by the tribal court of such tribe.

See, also, 25 U.S.C. § 1911 (2006) (corresponding ICWA provision regarding transfer of proceedings). The party opposing a transfer of jurisdiction to the tribal courts has the burden of establishing that good cause not to transfer the matter exists. *In re Interest of Zylena R. & Adrionna R., supra*. Because the

State opposed Yolanda's motion to transfer, it bore the burden of establishing good cause in this case.

Neither ICWA nor NICWA defines "good cause," but the Bureau of Indian Affairs has published nonbinding guidelines (BIA Guidelines) for determining whether good cause exists. The appellate courts of this state have looked to the BIA Guidelines in the past in determining good cause. See, *In re Interest of Zylena R. & Adrionna R.*, *supra*; *In re Interest of Melaya F. & Melysse F.*, 19 Neb. App. 235, 810 N.W.2d 429 (2011).

Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed. Reg. 67,584, 67,591 (Nov. 26, 1979) (not codified), states in part:

> C.3. Determination of Good Cause to the Contrary
>
> (a) Good cause not to transfer the proceeding exists if the Indian child's tribe does not have a tribal court as defined by [ICWA] to which the case can be transferred.
>
> (b) Good cause not to transfer the proceeding may exist if any of the following circumstances exists:
>
> (i) The proceeding was at an advanced stage when the petition to transfer was received and the petitioner did not file the petition promptly after receiving notice of the hearing.
>
> (ii) The Indian child is over twelve years of age and objects to the transfer.
>
> (iii) The evidence necessary to decide the case could not be adequately presented in the tribal court without undue hardship to the parties or the witnesses.
>
> (iv) The parents of a child over five years of age are not available and the child has had little or no contact with the child's tribe or members of the child's tribe.
>
> (c) Socio-economic conditions and the perceived adequacy of tribal or Bureau of Indian Affairs social services or judicial systems may not be considered in a determination that good cause exists.

With respect to the timeliness of transfer requests, the commentary to the BIA Guidelines states:

> Although [ICWA] does not explicitly require transfer petitions to be timely, it does authorize the court to refuse

to transfer a case for good cause. When a party who could have petitioned earlier waits until the case is almost complete to ask that it be transferred to another court and retried, good cause exists to deny the request.

44 Fed. Reg., *supra*, 67,590, C.1, commentary. The commentary further states, "Application of th[e] criterion" in subsection (b)(iii) of the guidelines, quoted above, "will tend to limit transfers to cases involving Indian children who do not live very far from the reservation." 44 Fed. Reg., *supra*, 67,591, C.3, commentary.

[4,5] The Nebraska Supreme Court recently considered whether there was good cause not to transfer a case to tribal court in *In re Interest of Zylena R. & Adrionna R.*, 284 Neb. 834, 825 N.W.2d 173 (2012), *cert. denied sub nom. Nebraska v. Elise M.*, ___ U.S. ___, 134 S. Ct. 65, ___ L. Ed. 2d ___ (2013). The court in *In re Interest of Zylena R. & Adrionna R.* first considered what constitutes a "proceeding" for purposes of ICWA and NICWA in order to determine whether the proceeding in that case was at such an advanced stage as to justify denial of the motion to transfer. The court determined that "[u]nder the definitional sections of ICWA and NICWA, the term 'child custody proceeding' includes foster care placement, termination of parental rights, preadoptive placement, and adoptive placement." 284 Neb. at 845, 825 N.W.2d at 181. The court concluded:

ICWA and NICWA contemplate four different types of child custody proceedings, two of which must be transferred from a state court to a tribal court upon proper motion in the absence of good cause to the contrary. Thus when the BIA Guidelines state that good cause may exist when "[t]he proceeding was at an advanced stage" at the time a petition to transfer is received, they can only be referring to one of the two proceedings subject to transfer: foster care placement *or* termination of parental rights. The State's argument that a foster care placement proceeding and a termination of parental rights proceeding are a single "proceeding" for purposes of the "advanced stage" analysis is inconsistent with the plain language of ICWA and NICWA, which defines them as separate

proceedings. The fact that Nebraska law permits both objectives to be pursued sequentially in a single-docketed case is entirely irrelevant to the question of whether they are separate "proceedings" under the plain statutory language of ICWA and NICWA.

284 Neb. at 846, 825 N.W.2d at 182. The court held that a foster placement proceeding and a subsequent termination of parental rights proceeding involving an Indian child are separate and distinct under ICWA and NICWA, disapproving prior Nebraska case law, specifically *In re Interest of C.W. et al.*, 239 Neb. 817, 479 N.W.2d 105 (1992), to the extent it could be read as holding that such proceedings are not separate and distinct. In *In re Interest of Zylena R. & Adrionna R.*, the tribe requested transfer less than a month after the State filed its termination motions and prior to the parents' pleas and any substantive hearing on the termination. Accordingly, the Supreme Court found it clear that the case was not at an advanced stage of the termination proceeding.

[6] The court in *In re Interest of Zylena R. & Adrionna R.* also held that the courts of this state should not apply the "best interests of the child" standard in deciding whether good cause exists to deny motions to transfer child custody proceedings to tribal court, further overruling *In re Interest of C.W. et al., supra*, in this regard.

The initial adjudication petition in this case was filed in December 2010. The first motion for termination of parental rights was filed in April 2012. In December 2012, a 2-day formal termination hearing was held. This termination motion was dismissed for failure to include NICWA allegations. On January 2, 2013, the State filed the second termination motion, which included NICWA allegations, and Yolanda filed her motion to transfer on January 16. In overruling Yolanda's motion, the court found that good cause had been shown to deny Yolanda's motion to transfer, in part because it was filed at an advanced stage of the proceeding. The court observed that the case had been pending for over 2 years and that a formal hearing had already been held on the first termination motion. The court also relied on the fact that Yolanda's motion

to transfer was filed nearly a year after the State filed the first termination motion.

The Nebraska Supreme Court's decision in *In re Interest of Zylena R. & Adrionna R.*, 284 Neb. 834, 825 N.W.2d 173 (2012), *cert. denied sub nom. Nebraska v. Elise M.*, ___ U.S. ___, 134 S. Ct. 65, ___ L. Ed. 2d ___ (2013), makes it clear that foster care placement proceedings and termination of parental rights proceedings are separate proceedings for purposes of "advanced stage" analysis. Thus, the amount of time between the initial adjudication petition and Yolanda's motion to transfer is not relevant. Here, Yolanda's motion to transfer was filed very shortly after the current termination motion was filed, and as such, this termination proceeding cannot be said to be at an advanced stage. We recognize that this case presents a somewhat unique procedural posture in that a previous termination proceeding was completed but was ultimately dismissed because of a pleading deficiency. Yolanda did not seek to transfer the previous termination proceeding despite the prior court acknowledgment that NICWA applied to this case. In its oral findings made at the conclusion of the hearing, the juvenile court acknowledged the holding in *In re Interest of Zylena R. & Adrionna R.*, but essentially found that this case was still at an advanced stage because it was a second termination motion within the same case, filed nearly a year after the first termination motion, and was therefore not a new proceeding. The court also noted that the second termination motion included basically the same allegations as the first termination motion, with the addition of the NICWA allegations.

We disagree with the juvenile court's determination that the second termination motion is not a new proceeding. To the contrary, the first termination motion was dismissed and a new trial will need to be held on the second termination motion. Additional evidence will likely be necessary at the second termination trial in order to attempt to prove the NICWA allegations. Under the dictates of *In re Interest of Zylena R. & Adrionna R., supra*, the second termination motion is a separate and distinct proceeding, and as such, Yolanda's motion to transfer was not made at an advanced

stage. Accordingly, the juvenile court abused its discretion in finding otherwise.

The juvenile court also denied the motion to transfer the termination proceeding involving Dayten because the court still had continuing jurisdiction over Jayden. This is essentially a forum non conveniens matter, which may be a valid basis for good cause to deny transfer. See, *In re Interest of Leslie S. et al.*, 17 Neb. App. 828, 770 N.W.2d 678 (2009), *abrogated on other grounds*, *In re Interest of Zylena R. & Adrionna R., supra*; *In re Interest of Brittany C. et al.*, 13 Neb. App. 411, 693 N.W.2d 592 (2005). The consideration of forum non conveniens essentially involves the question of whether presentation of the matter in the tribal court would be an undue hardship to the parties or witnesses under the BIA Guidelines noted above.

In *In re Interest of Leslie S. et al., supra*, the State filed a petition, alleging that the mother's six children were within the meaning of § 43-247(3)(a). The mother and all six children were enrolled members of the Omaha Tribe of Nebraska. The father of the youngest two children was also a tribe member. After the original juvenile petition was filed, there were several additional petitions filed in juvenile court involving some of the children. A delinquency case was filed involving one child. A truancy case involving a second child was filed. That child also had a child of her own, who was not eligible for tribal membership but who had been made a ward of the State in another juvenile case. The tribe filed an initial motion to transfer to tribal court, which was denied based on the mother's objection. Subsequently, the tribe filed a second motion to transfer and the father of the youngest two children also filed a motion to transfer. The juvenile court found good cause to deny the transfer based on the facts that a previous motion had been denied, that the case was at an advanced stage, that the court had jurisdiction over multiple cases involving several of the children, and that the transfer would not be in the children's best interests. The father appealed in this case predating *In re Interest of Zylena R. & Adrionna R.*, 284 Neb. 834, 825 N.W.2d 173 (2012), *cert. denied sub nom. Nebraska v. Elise M.*, ___ U.S. ___, 134 S. Ct. 65, ___ L. Ed.

2d ___ (2013), and this court affirmed, relying on the fact that the father had not filed his motion until more than 2 years after the filing of the original juvenile court petition. We also relied on the fact that several other cases involving some of the children would remain in the juvenile court.

While it is true in this case that if Dayten's case were transferred to tribal court, the juvenile court would presumably retain jurisdiction over Jayden's case, we find that this case is nevertheless distinguishable from *In re Interest of Leslie S. et al.*, which involved numerous children and proceedings. Further, the motion in *In re Interest of Leslie S. et al.* was denied for the additional reason that it was filed at an advanced stage. Here, the proceeding sought to be transferred is for termination of parental rights as to Dayten only, which does not affect, and is not affected by, the remaining case regarding Jayden. We note that the State initially sought termination of Yolanda's parental rights as to both children but that during the hearing on that motion, the State apparently moved to dismiss the termination allegations relating to Jayden. A bill of exceptions from that hearing was not included in our record on appeal, so it is unclear why the State chose not to proceed with termination as to Jayden at that time or why Jayden was not included in the second termination motion. Having already found that the motion to transfer Dayten's case was not at an advanced stage of the second termination proceeding, we also conclude that the fact that Jayden's case remains in the juvenile court is not a sufficient reason to deny the transfer. Under the circumstances of this case, the juvenile court abused its discretion in finding that its retention of jurisdiction over Jayden's case supported a finding of good cause to deny transfer of Dayten's termination proceeding.

[7] As to additional factors that might support invoking the doctrine of forum non conveniens, the record is devoid of any such evidence. Prior case law has noted:

> In determining whether the doctrine of forum non conveniens should be invoked, the trial court should consider practical factors that make trial of the case easy, expeditious, and inexpensive, such as the relative ease of

access to sources of proof, the cost of obtaining attendance of witnesses, and the ability to secure attendance of witnesses through compulsory process.

*In re Interest of C.W. et al.*, 239 Neb. 817, 828, 479 N.W.2d 105, 113 (1992), *disapproved and overruled on other grounds, In re Interest of Zylena R. & Adrionna R., supra.* Accord, *In re Interest of Melaya F. & Melysse F.*, 19 Neb. App. 235, 810 N.W.2d 429 (2011); *In re Interest of Brittany C. et al.*, 13 Neb. App. 411, 693 N.W.2d 592 (2005).

For example, in *In re Interest of Brittany C. et al.*, there was evidence at the hearing on the motion to transfer that neither the mother nor her children were living on the reservation. There was evidence that the mother had lived in Scotts Bluff County since 1984 and that the children had lived in the area for most of their lives. There was testimony about which witnesses would be needed to present the case, as well as testimony that it took about 2 hours to travel between the location of the parties and witnesses and the location of the tribal court. Although the evidence was unclear, there was some evidence about the process used to call witnesses to appear in tribal court.

In this case, no such evidence was presented. A review of the transcript shows that the Tribe is located in South Dakota and that at least at the time the juvenile petition was filed, Yolanda and the children resided in the Lincoln, Nebraska, area. There was no evidence presented at the hearing on the motion to transfer regarding the current location of Yolanda and the children, what witnesses might be called in the termination proceeding, where those witnesses were located, where the tribal court was located, or the ease with which evidence might be presented in the tribal court. We find that the juvenile court abused its discretion in determining that transferring the termination proceeding involving Dayten to the tribal court would result in a forum non conveniens.

The State had the burden of establishing good cause not to transfer the proceedings regarding Dayten to tribal court, and it failed to do so. The juvenile court abused its discretion in finding otherwise. Accordingly, we reverse the order of the juvenile court and remand the cause to the juvenile

court with directions to sustain the motion to transfer to the tribal court.

## CONCLUSION

Because the State did not meet its burden of establishing good cause to deny transfer to tribal court, the juvenile court abused its discretion in denying Yolanda's motion to transfer. We reverse the order of the juvenile court and remand the cause with directions to sustain the motion to transfer.

Reversed and remanded with directions.